IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HiPR INNOVATION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. |
| | ) |
| KALOGON, INC., | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

Plaintiff HiPR Innovation, Inc. ("HiPR" or "Plaintiff") hereby files this Complaint and makes the following allegations of patent infringement relating to U.S. Patent No. 11,191,687 ("'687 Patent" or "Patent-In-Suit") against Defendant Kalogon, Inc. ("Kalogon" or "Defendant"):

## PARTIES

1. Plaintiff HiPR is a Delaware corporation with a principal place of business in Laredo, Texas.

2. Defendant Kalogon is a Delaware corporation with a principal place of business in Melbourne, Florida.

## JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court thus has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

4. The Court has both specific and general personal jurisdiction over Kalogon as it is a Delaware corporation.

5. Venue is proper in this District as to Kalogon under 28 U.S.C. § 1400(b) because Kalogon is a Delaware corporation. *See TC Heartland LLC v. Kraft Food Grp. Brands LLC*, 581 U.S.

{02102493;v1 }   1

258, 137 S. Ct. 1514 (2017).

## FACTUAL BACKGROUND

6. HiPR was founded in August 2019 by Harikrishan Sachdev ("H. Sachdev") and Koushalya Sachdev ("K. Sachdev") (collectively, the "Sachdevs").

7. HiPR developed The Feather ("Feather"), the first smart, dynamic wheelchair cushion system built to prevent pressure ulcers in wheelchair users.

8. The motivation behind the development of the Feather came when the Sachdevs witnessed their cousin, a paraplegic, suffer from recurrent pressure ulcers. Witnessing their cousin's journey and the issues caused by recurrent pressure ulcers, the Sachdevs were inspired to create a solution to solve the pressure ulcers problem, a problem that impacts two out of every three wheelchair users in the United States.

9. The Sachdevs launched into extensive research and development to solve this problem. This research led to the development of the Feather.

10. Since its founding, HiPR has received support from The Dell Medical School Texas Health Catalyst, Austin Technology Incubator, Southwest Pediatric Device Consortium, and Texas Innovation Hub, among others. HiPR was also selected to participate in the prestigious Techstars Healthcare 2023 Cohort sponsored by Cedars-Sinai, UC Irvine, Point 32 Health, and United Healthcare. HiPR's founder was also awarded the Texas Business Hall of Fame Future Business Legend Perfranis Family Award for building HiPR.

11. In connection with its research and development, HiPR invented and patented ground-breaking innovations related to recurrent pressure ulcer prevention and management in wheelchair users. HiPR disclosed its novel inventions in the issued '687 Patent and U.S. Patent No. 10,555,848.

## ASSERTED U.S. PATENT NO. 11,191,687

12. HiPR owns the '687 Patent, and holds all substantial rights, title, and interest in and to the '687 Patent, including the right to sue for infringement. A true and correct copy of the '687 Patent is attached as **Exhibit A**.

13. The '687 Patent is entitled "PORTABLE CUSHION AND METHOD OF USE" and issued on December 7, 2021 from U.S. Patent Application No. 16/527,524, filed July 31, 2019. The '687 Patent ultimately claims priority to an application filed April 29, 2017.

14. Both H. Sachdev and K. Sachdev are named inventors on the '687 Patent.

15. The '687 Patent generally describes a smart, dynamic, inflatable cushion that provides non-uniform pressure by bladder pods with pressure sensors being inflated and deflated. ('687 Patent, Abstract.)

16. The '687 Patent discloses several problems with prior art cushion approaches to solving the pressure ulcer problem that continues to plague the lives of individuals with disabilities. ('687 Patent, 1:20-3:13.)

17. The '687 Patent discloses a cushion that is different from the prior art that "is connected to a microcontroller and a network of sensors that react to the areas of high pressure by inflating and deflating areas of the cushion, rotates air constantly throughout the chair, and is connected to a communication device to provide optional user feedback. ('687 Patent, 1:45-51.)

18. The inventive subject matter of the '687 Patent is characterized by its three independent claims and 17 total claims, interpreted in view of its specification and prosecution history. Claim 1 of the '687 Patent is set forth below:

    **1.** An inflatable cushion with non-uniform pressure comprising;

    a cover;
    a top layer;

>a base;
>a communication device;
>a microcontroller;
>a portable power source;
>a gas pump;
>a primary tube;
>a blow off valve;
>a plurality of two-way valves;
>a plurality of secondary tubes;
>a plurality of pressure sensors; and
>a plurality of bladder pods; wherein
>
>said pressure sensors are designed to sense air pressure in said bladder pods;
>
>said plurality of bladder pods are on said base;
>
>said plurality of bladder pods are below said top layer;
>
>said plurality of bladder pods are in individual fluid communication with said individual secondary tubes;
>
>said individual secondary tubes are in fluid communication with said individual pressure sensors;
>
>said individual secondary tubes are in further fluid communication with said individual two-way valves;
>
>said two-way valves are in fluid communication with said primary tube;
>
>said primary tube is in fluid communication with said gas pump and said blow off valve;
>
>said microcontroller can receive and send signals to said blow off valve, said gas pump, said individual two-way valve, said communication device, and/or said individual pressure sensors;
>
>said microcontroller, said gas pump, said blow off valve, said plurality of two-way valves, and said plurality of pressure sensors are all powered by said portable source;
>
>and said plurality of bladder pods are covered by said cover attaching to said base.

19.     By virtue of the USPTO's issuance of the '687 Patent, each of the above claims was shown to be inventive, novel, non-obvious, and innovative over at least the disclosures in the prosecution history.

## KALOGON'S KNOWLEDGE OF HiPR's PATENTS

20. On March 18, 2024, HiPR sent a letter to Kalogon notifying Kalogon that Kalogon's Orbiter Cushion ("Orbiter") infringes at least claim 1 of the '687 Patent (the "March 18th letter"). HiPR requested that Kalogon immediately cease and desist from manufacturing, marketing, and sales of the Orbiter.

21. HiPR and Kalogon exchanged correspondence following the March 18th letter, but ultimately Kalogon elected not to license the '687 Patent. Nevertheless, Kalogon continued – and continues to this day – to manufacture, market, offer for sale, and sell the Orbiter.

## OVERVIEW OF KALOGON'S INFRINGING ACTIVITIES

22. Kalogon uses, distributes, markets, sells, and/or offers to sell its Orbiter product in the United States. *See* https://www.kalogon.com/orbiter (last visited March 18, 2025).

23. Kalogon also manufactures, uses, distributes, markets, sells, and/or offers to sell in the United States Kalogon's Orbiter Med Cushion ("Orbiter Med") (collectively with Orbiter, "Kalogon Cushions"). *See* https://www.kalogon.com/orbiter-med (last visited March 18, 2025).

24. Kalogon advertises the Orbiter as a novel cushion that "relieves pain, improves posture and increases blood flow to ensure you can live your best active, seated life" as well as "eliminat[ing] direct pressure on sensitive areas not only to accelerate the healing process of pressure injuries, but also prevents new injuries from occurring," representing that the Orbiter achieves this result by monitoring "pressure changes within air cells, and adapt[ing] to user defined preferences in real-time to maximize comfort and stability." *See* https://www.kalogon.com/orbiter; https://www.kalogon.com/technology-new (last visited March 18, 2025).

25. Kalogon also advertises the Orbiter as using "a construction that can adjust the shape of its surface through powered control. Known as an active surface, the cushion provides automatic

altering and adjustment of the client's applied pressures without the user adjusting position" with "a *dynamic surface* capable of performing targeted pressure redistributions around the pelvis and thighs to reduce stagnant pressure points . . . Implement[ing] a *self-checking* system, capable of detecting when to increase or decrease inflation levels, monitor for air leaks and eliminate the need for complex maintenance." *See* The Kalogon Orbiter Smart Cushion: Whitepaper (*https://www.kalogon.com/_files/ugd/fa7313_0c25861ce376498b9619f400ec9b95f8.pdf*) (last visited March 18, 2025).

26. In its marketing white paper, Kalogon represents that the Orbiter "periodically adjusts interface pressure on the user's seated surface by inflating and deflating five air cells within the cushion." *See id.*

27. An examination of the Orbiter reveals that the Orbiter has: (1) a cover that is "made with fabric intended to stretch in four directions"; (2) a top layer that is "a stack up of visco-elastic, slow recovery foam"; (3) a base that is "a stiff surface at the base of the air cushion"; (4) a communication device as a controller that "houses the pressure control system, battery and electromechanical hardware that inflate and deflate the air cells over a timed interval" and "[t]he air cells pneumatically link to the controller . . . through a connecting hose"; (5) a microcontroller in the controller; (6) a portable power source as the battery housed in the controller; (6) a gas pump, including as "electromechanical hardware that inflate and deflate the air cells" housed in the controller; (7) a primary tube from the controller; (8) blow off valve that allows the Orbiter to deflate; (9) a plurality of two-way valves that allow the Orbiter inflate and deflate air cells; (10) a plurality of secondary tubes that allow the five air pods to independently increase and decrease pressure; (11) at least five pressure sensors that "continuously monitor[] the pressure applied by the user in five specific regions"; and (12) five air cells that are bladder pods. *See id*.

28. Upon information and belief, the Orbiter Med has the same technology as the Orbiter that renders it a dynamic smart cushion with the difference being the top layer is customizable to provide "postural support options" and customization for sizing." *See* https://www.kalogon.com/orbiter-med (last visited March 18, 2025).

## COUNT I
## INFRINGEMENT – '687 PATENT

29. HiPR re-alleges and incorporates by reference the allegations in paragraphs 1-28, as if fully set forth herein.

30. HiPR is informed and believes, and on that basis alleges, that Kalogon infringed and is currently infringing one or more claims (e.g. at least claim 1) of the '687 Patent, in violation of at least 35 U.S.C. § 271(a) by using, offering to sell, and selling Kalogon Cushions, including the Orbiter and Orbiter Med. For purposes of notice pleading, HiPR shows below how the Orbiter infringes claim 1 of the '687 Patent as exemplary of the Kalogon Cushions infringement.

31. Kalogon Cushions are "inflatable cushion with non-uniform pressure comprising:" – the Orbiter is an inflatable cushion with non-uniform pressure as shown on the Orbiter product page at https://www.kalogon.com/orbiter and in The Kalogon Orbiter Smart Cushion: Whitepaper located at https://www.kalogon.com/study-and-whitepaper.

- "a cover; a top layer; a base; a communication device; a microcontroller; a portable power source; a gas pump; a primary tube; a blow off valve; a plurality of two-way valves; a plurality of secondary tubes; a plurality of pressure sensors; and plurality of bladder pods" – the Orbiter is an inflatable cushion with non-uniform pressure that has each of the above components. *See* Paragraph 27.

- "said pressure sensors are designed to sense air pressure in said bladder pods" – the

Obiter's pressure sensors are designed to sense air pressure in said bladder pods as the Orbiter has five air cells and each air cell has a pressure sensor to allow the Orbiter to "display firmness values between 0% and 100% for each of the five cells in the cushion" and for the Orbiter to "continuously monitors the pressure applied by the user in the five specific regions" such that "[i]f the user leans in any direction, the cushion adjusts as necessary." *See* The Kalogon Orbiter Smart Cushion: Whitepaper located at https://www.kalogon.com/study-and-whitepaper.

- "said plurality of bladder pods are on said base" – the Orbiter has five air cells, which are bladder pods, on the Orbiter's base:

 

- "said plurality of bladder pods are below said top layer" – the Orbiter has five air cells, which are bladder pods, and "[a]bove the air cells us a stack-up of visco-elastic, slow recovery foam." *See* The Kalogon Orbiter Smart Cushion: Whitepaper located at https://www.kalogon.com/study-and-whitepaper.

- "said plurality of bladder pods are in individual fluid communication with said individual secondary tubes" – upon information and belief, the Orbiter's five air cells

are in individual fluid communication with the individual secondary tubes as the five cells communicate the level of pressure of the cell and then, if so required, the secondary tubes are communicated with to allow the flow of air to either increase or decrease the cell's pressure. *See id.*

- "said individual secondary tubes are in fluid communication with said individual pressure sensors" – upon information and belief, the Orbiter's secondary tubes are in fluid communication with the pressure sensors as the Orbiter is a dynamic surface with five air cells with the pressure for each air cell individually monitored, each air cell also independently fills with air and deflates to the desired pressure set for that air cell, and each air cell has a secondary tube from the main tub, which requires the secondary tubes to be communicating with the pressure sensors. What is more, the Orbiter cushion will "begin pumping air into the affected zone," which, again, requires the secondary tubes to be communicating with the pressure sensors.

- "said individual secondary tubes are in further fluid communication with said individual two-way valves" – upon information and belief, the Orbiter's secondary tubes are in further fluid communication with said individual two-way valves as the Orbiter is a dynamic surface with five air cells with the pressure for each air cell individually monitored, each air cell also independently fills with air and deflates to the desired pressure set for that air cell, and each air cell has a secondary tube from the main tub, which requires the secondary tubes to be communicating with the two-way valves to either fill or deflate the air cell. What is more, the Orbiter cushion will "begin pumping air into the affected zone," which, again, requires the secondary tubes to be communicating with the two-way valves to allow air to flow into the cell to inflate.

- "said two-way valves are in fluid communication with said primary tube" – upon information and belief, the Orbiter's two-way valves are in fluid communication with the primary tube as the Orbiter is a dynamic surface with five air cells the requires that each air cell can inflate or deflate by passing air from the gas pump, located in the controller, to the primary tube and passed through the two-way valves.

- "said primary tube is in fluid communication with said gas pump and said blow off valve" – upon information and belief, the Orbiter's primary tube is in fluid communication with its gas pump and blow off valve as the Orbiter is a dynamic surface with five air cells that requires that each air cell can inflate or deflate with the inflation requiring the air to from the gas pump to flow through the primary tube and deflation requiring air flowing from the air cell and ultimately to the blow off valve.

- "said microcontroller can receive and send signals to said blow off valve, said gas pump, said individual two-way valves, said communication device, and/or said individual pressure sensors" – upon information and belief, the Orbiter's microcontroller receives and sends signals to the blow off valve, gas pump, two-way valves, the communication device and individual pressure sensors, as the Orbiter is a dynamic surface with five air cells with each air cells pressure monitored by individual pressure sensors that is reported in the app to the user, that each air cell independently inflates and deflates based on the desired pressure set for that cell, each cell has a secondary tube from the primary tube that connects the controller to the accused Orbiter cushion, and each tube has two-way vales that allow or deny the air flow from the primary tube that receives air from the gas pump and deflates or releases air pressure by the blow off valve. This requires the microcontroller to send and receive signals from the blow off valve, gas

pump, two-way valves, communication device, and pressure sensors.

- "said microcontroller, said gas pump, said blow off valve, said plurality of two-way valves, and said plurality of pressure sensors are all powered by said portable power source" – the Orbiter's controller has a battery that powers the microcontroller, gas pump, blow off valve, two-way valves, and pressure sensors.

- "said plurality of bladder pods are covered by said cover attaching to said base" – the Orbiter's five air cells are covered with the cover attaching to the base by wrapping around the entire Orbiter:



32.     As shown in the exemplary infringement mapping above, the Kalogon Cushions satisfy, literally or under the doctrine of equivalents, each and every claim limitation of at least claim 1 of the '687 Patent. HiPR expressly reserves the right to identify additional asserted claims and products in its infringement contentions in accordance with the applicable rules and schedules of the Court. Claim 1 is provided for notice pleading only and is not presented as an "exemplary" claim of every '687 Patent claim and HiPR expressly reserves the right to modify its infringement contentions.

33.     Kalogon's infringement is knowing, egregious, consciously wrongful, and willful. Kalogon learned of the allowed claims of the '687 Patent no later than March 18, 2024. Despite this,

Kalogon elected to continue to infringe the '687 Patent without entering into a business relationship with HiPR or paying for a license to the '687 Patent.

34. To the extent applicable, Kalogon has been placed on actual notice of the '687 Patent by the March 18, 2024 correspondence from HiPR. Kalogon has also been placed on actual notice of the '687 Patent by the filing of this Complaint.

35. To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been satisfied with respect to the '687 Patent.

36. As a result of Kalogon's infringement of the '687 Patent, HiPR has been injured by Kalogon's unauthorized use of HiPR's intellectual property. HiPR seeks monetary damages in an amount adequate to compensate for Kalogon's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and HiPR will continue to suffer damages in the future unless Kalogon's infringing activities are enjoined.

37. Unless an injunction is issued enjoining Kalogon and its agents, servants, employees, representative, affiliates, and all others acting or in active concert therewith from infringing the '687 Patent, HiPR will be greatly and irreparably harmed.

## **PRAYER FOR RELIEF**

Plaintiff HiPR prays for the following relief:

A. A judgment that Kalogon has infringed one or more claims of the '687 Patent;

B. A permanent injunction enjoining Kalogon and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all other acting in active concert or participation with Kalogon, from infringing the '687 Patent;

C. An award of damages resulting from Kalogon's acts of infringement in accordance with 35 U.S.C. § 284;

D.      A judgment and order finding that Kalogon's acts of infringement were egregious and willful and trebling damages under 35 U.S.C. § 284;

E.      A judgment and order requiring Kalogon to provide accounting and to pay supplemental damages to HiPR, including, without limitation, prejudgment and post-judgment interest; and

F.      Any and all other relief to which HiPR may show itself to be entitled or the Court deems just and appropriate.

## DEMAND FOR A JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, HiPR hereby demands a jury trial as to all issues so triable.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

| | |
|---|---|
| *Of Counsel:* | Andrew C. Mayo (#5207) |
| | Randall J. Teti (#6334) |
| LAHTI HELFGOTT LLC | 500 Delaware Avenue, 8th Floor |
| | PO Box 1150 |
| Brian E. Lahti | Wilmington, DE 19899 |
| 299 S. Main Street, Suite 1300 | (302) 654-888 |
| Salt Lake City, UT 84111 | AMayo@ashbyeddes.com |
| (650) 390-4075 | RTeti@ashbygeddes.com |
| blahti@lhlitigation.com | |
| | *Attorneys for Plaintiff HiPR Innovation, Inc.* |
| Jonathan A. Helfgott | |
| 1624 Market Street, Suite 202 | |
| Denver, CO 80202 | |
| (303) 376-6160 | |
| jhelfgott@lhlitigation.com | |

Dated: March 19, 2025